Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2158 | **DATE** | 3/29/2002 |
| **CASE TITLE** | RONALD PEARMAN vs. CHRISTINE TODD WHITMAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] It is hereby ordered that summary judgment is granted in favor of the EPA on Count II of the complaint. The MSPB's decision is hereby affirmed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | APR 01 2002 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| ✓ | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 0 1 2002

| RONALD PEARMAN, | ) | |
|---|---|---|
| | ) | No. 01 C 2158 |
| | ) | Judge Ronald A. Guzman |
| Plaintiff, | ) | |
| v. | ) | |
| CHRISTINE TODD WHITMAN, Administrator, United States Environmental Protection Agency, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending is defendant Christine Todd Whitman's, Administrator, United States Environmental Protection Agency motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below this motion is granted.

### INTRODUCTION

This is a "mixed case" in which plaintiff Ronald Pearman ("Pearman"), a former United States Environmental Protection Agency ("EPA") employee, is both alleging Title VII claims (racial discrimination and retaliation) in Counts I and II, and seeking review of the Merit Systems Protection Board's ("MSPB") decision upholding his termination in Count III. In Count III,

1

Pearman raises several procedural and substantive issues addressed by the MSPB, each of which was resolved in favor of the EPA. In brief, the issues are: (1) whether the MSPB's refusal to re-open discovery was arbitrary and capricious; (2) whether the MSPB's refusal to order Pearman's former counsel to turn over files was an abuse of discretion; (3) whether the MSPB's refusal to grant a second request for an extension of the hearing date was an abuse of discretion; (4) whether the MSPB's decision to allow the EPA to use a prior settlement with Pearman as a factor in Pearman's termination proceeding was an abuse of discretion; (5) whether the MSPB's ruling that the EPA's action was not retaliation is supported by substantial evidence; (6) whether the MSPB's decision to affirm the penalty imposed by EPA was an abuse of discretion; (7) whether the MSPB 's finding that the EPA properly followed its policy on alcoholism was an abuse of discretion; and (8) whether the MSPB's findings that while on duty Pearman was drunk, slept, and used abusive language were arbitrary and capricious or were supported by substantial evidence.

## BACKGROUND

Pearman was employed by the EPA in Chicago from November 1979 until May 5, 2000. Tab 24 at 1; Tr. 205.1. He worked in the Superfund Division, under the supervision of Thomas Marks (first level) and Wendy Carney (second level). Tr. 58-59, 117-18. On February 24, 2000, Pearman visited the office of Sabrina Argentieri, an attorney with whom he had worked on a case. Argentieri determined that Pearman was very drunk due to the smell of his breath, his behavior, and his slurred speech. *Id.* at 2-4. Argentieri's office mate, Eva Hahn, witnessed Pearman's behavior and also concluded he was drunk. *Id.* at 6-7. While in their office, Pearman was

2

offensive and rude, and Argentieri felt threatened by his behavior. *Id.* at 4, 11-12.

When Pearman left Argentieri's office, he returned to his office cubicle, where he fell asleep. He was seen sleeping by supervisors Marks and Carney. Tab 24 at 12. Marks awakened Pearman and noted that he was incoherent, that his breath smelled of alcohol, and that he was slurring his words. *Id.* at 8-9. Marks ordered Pearman to go to EPA's Health Services Unit on the fourth floor of the building occupied by EPA. He accompanied Pearman to the fourth floor, but Pearman refused to go to the health unit. *Id.* Instead, after noting that the union office (also on the fourth floor) was closed, Pearman took an elevator back to the lobby. Unknown to Marks, Pearman eventually went to the health unit, after which he did not return to work. Tr. 66-68.

Based on Pearman's intoxication and sleeping on duty, and based on a series of prior disciplinary actions, EPA proposed Pearman's removal (termination) on March 20, 2000. Tab 5 at 4b; Tab 24 at 21. Pearman responded to the proposed removal at a meeting with EPA personnel a month later, on April 19, 2000. On April 27, 2000, David Ullrich, Deputy Regional Administrator, removed Pearman from the federal service, effective May 5, 2000. Tab 5 at 4a. Pearman appealed his termination to the MSPB on June 5, 2000. His appeal contained a claim that the EPA's action was discriminatory because of his race (black), but did not make a claim of retaliation for EEO activity. Tab 1.

Pearman designated Eric Dunham, a lawyer, to represent him during his appeal. Tab 1. On June 6, 2000, the MSPB acknowledged Pearman's appeal and issued a scheduling order requiring discovery and motions be filed within 25 days (July 2, 2000). Concurrently, the MSPB issued notice to Pearman and EPA that the hearing would be held on July 12, 2000. Attorney Dunham was served with copies of the orders. Tab 2 at 3; Tab 3 at 1.

3

On July 7, 2000 the Administrative Law Judge assigned to the appeal held a telephonic prehearing conference with EPA and Dunham. Tab 7. Pearman was ordered to file his prehearing submissions, due June 30, 2000, no later than July 12, 2000, and the hearing date was extended two weeks, to July 27, 2000. *Id.* at 6. On July 12, 2000, Dunham filed Pearman's prehearing submissions. Tab 8. The submissions contained Pearman's statements of facts and issues, a list of witnesses, and an exhibit list. *Id.* On July 20, 2000, the ALJ re-scheduled the hearing to August 21, 2000. Tab 11.

Sometime after July 20, 2000, Pearman hired a second lawyer, Edward Theobald. Theobald filed his appearance with the MSPB on August 1, 2000. Tab 12; Tab 14. On August 1, 2000, the ALJ granted Theobald's request for a continuance of the hearing date, and re-scheduled the hearing to September 14, 2000. Tab 13. On August 11, Theobald filed a second request for a continuance of the hearing (two additional weeks), a motion to compel Dunham to turn over his files to Theobald, and a motion to re-open discovery. Tab 17; Tab18; Tab 19 at 1. On August 24, 2000, the ALJ denied the motion to compel Dunham to produce his files, denied the request to re-open discovery and denied the request for another extension of the hearing date. Tab 19. The ALJ stated that because Dunham had not filed any discovery requests, Theobald could inspect and copy the entirety of the MSPB's files for the matter and that EPA would provide him with all relevant documents in its possession prior to the hearing. Tab 19 at 2.

Pearman's hearing was held on September 14, 2000. Tr. 1-302. The ALJ affirmed the EPA's removal of Pearman by written decision on January 30, 2001. Tab 24. He found that EPA established by a preponderance of the evidence that Pearman was under the influence of alcohol while on duty *(id.* at 11-12); that Pearman was sleeping while on duty *(id.* at 12); that Pearman's

4

conduct in Argentieri's office involved abusive conduct *(id.* at 14); and that his removal promoted the efficiency of the federal service *(id.* at 20). The ALJ further found that Pearman failed to show that his removal constituted race discrimination *(id.* at 16); that Pearman failed to establish that EPA committed harmful procedural error in effecting his removal *(id.* at 18); and that Pearman failed to establish that his removal constituted reprisal for protected activity *(id.* at 19). Pearman filed this action to seek review of the MSPB's decision.

## **DISCUSSION**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment procedure is properly regarded not a a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327. 106 S. Ct. 2548. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)(citations omitted). "There mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2505.

The court's review of Pearman's challenge to the MSPB decision is limited to the administrative record of the MSPB proceedings. 5 U.S.C. § 7703(c); *Randle v. Benson,* 19F.3d 371, 373 (7th Cir. 1994)( in a "mixed case," a claim of discrimination requires a *de novo* review of the facts involved in the discrimination claim, and a non-discrimination claim requires only a review of the administrative record); *Mirza v. Department of Treasury,* 875 F. Supp. 513, 521 (N.D. Ill. 1995). A district court must affirm the MSPB's decision "unless it is: 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule, or regulation having been followed; or 3) unsupported by substantial evidence." *Kirkland v. Runyon,* 876 F.Supp. 941, 944 (S.D. Ohio 1995); 5 U.S.C. § 7703(c).

"Abuse of discretion" means, in the case of evaluating the appropriateness of a penalty, whether the penalty is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Biddle v. Rubin,* No. 95 C 1505, 1996 WL 14001, at *12 (N.D. Ill. Jan. 9, 1996), *citing Villela v. Department of Air Force,* 727 F.2d 1574, 1576 (Fed. Cir. 1984). Findings of the MSPB are governed by the "substantial evidence" standard, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Campbell v. Merit Systems Protection* Bd., 27 F.3d 1560, 1564 (Fed. Cir. 1994); *Baker v. Brown,* No. 95 C 7568, 1997 WL 89141, at *6 (N.D. Ill. Feb. 19,1997), *citing Gellerman v. Nimmo,* 704 F.2d 1004, 1005 (7th Cir. 1983). The scope of review is limited to ensuring that the required procedures have been followed and that EPA's action was not arbitrary or capricious. The "arbitrary, capricious" standard means that EPA's decision must have a rational basis in the law. *Grasso v. Internal Revenue Service,* 657 F.2d 224,225 (8th Cir. 1981); *Ali v. Brown,* 998 F. Supp. 917, 929 (N.D. Ill. 1998)(citation omitted).

6

## 1.     The MSPB's Refusal to Re-open Discovery

Pearman argues that the ALJ's decision to not allow a re-opening of discovery after he switched lawyers while preparing for the hearing was arbitrary and capricious. Cmpl. ¶¶ 41-45. However, the ALJ's ruling complied with 5 C.F.R. §§ 201.71-.75, the MSPB's discovery provisions. Title 5 C.F.R. § 1201 .73(d)(1) requires parties to make discovery requests "within 25 days after the date on which the judge issues an order to the respondent agency to product the agency file and response" to the appeal. On June 6, 2000, the ALJ issued his scheduling order to Pearman's attorney (Dunham) and the EPA to begin the discovery process. Tab 2. In his order, the ALJ stated the parties had 25 days to file discovery requests and motions. *Id.* at 3. Consequently, the deadline for filing discovery requests was on or about July 2, 2000. Tab 19 at 1.

It is undisputed that Pearman did not file any discovery requests prior to that deadline. On August 1, 2000, Pearman's second attorney (Theobald) made a request to re-schedule the hearing date and re-open discovery. The ALJ denied the request for further discovery, but granted an extension of the hearing date from August 21 to September 14, 2001. Tab 11; Tab 13. On August 11, 2000, Pearman's attorney again requested that discovery be re-opened. Tab 18. The ALJ again denied Pearman's request, specifically addressing Pearman's argument that he needed more time due to the error of his former counsel.

We find that the denial of Pearman's request to re-open discovery was within the scope of the ALJ 's authority and his scheduling order. 5 C.F.R. § 1201.41 (b)(4). Pearman had counsel at the time the scheduling order was issued, but failed to proceed with discovery. Because the ALJ's ruling was based on sound procedure it cannot be concluded that the ALJ's decision to deny

7

Pearman's request was arbitrary or capricious. Moreover, Pearman did not show that he was unable to prepare for the hearing. *Mitchell v. Espy*, 845 F.Supp. 1474, 1497 (D. Kan. 1994)(appellant must show that the MSPB's procedural error caused him substantial harm).

2. **The MSPB's Refusal to Order Pearman's Former Counsel to Turn Over Files**

A month before his hearing, on August 11, 2000, Pearman requested an order requiring Pearman's former attorney (Dunham), to turn over his files to his current attorney (Theobald). The ALJ denied the motion on August 24, 2000. Tab 19. Pearman claims that the refusal to order Dunham to turn over his files was arbitrary and capricious. Cmpl. ¶¶ 46-50.

Pearman's suggestion (Cmpl. ¶ 49) that the MSPB has the authority to control or supervise attorneys who have represented appellants before-it is without support. There is no rule or regulation giving the MSPB this authority. *See* 5 C.F.R. § 1201.41(b). Pearman cites Rule 1.16(d) Illinois Rules of Professional Conduct, which imposes on *attorneys* the obligation to return a client's papers. The Illinois rule does not empower a federal ALJ to compel compliance by a client's former counsel. *See* 5 C.F.R. §§ 1201.41(b); 1201.71-.75. In his order denying the motion, the ALJ stated: "I have no authority over Mr. Dunham. Nor is it the Board's practice to intervene in arguments between appellants and their attorneys." Tab 19 at 1. The ALJ also correctly noted that Pearman either was or soon would be in possession of whatever documents Dunham possessed, as EPA counsel was ready to provide Pearman with any additional documents from his Official Personnel File ("OPF"). *Id.* at 2.

3. **The MSPB's Refusal to Extend the Hearing Date**

8

Pearman next alleges that the ALJ's refusal to grant a two-week extension of the September 14, 2000 hearing was arbitrary and capricious. Cmpl. ¶ 51. Pursuant to the scheduling order of June 6, 2000, Pearman had more than three months' notice of the hearing date. Moreover, Pearman filed a motion for extension of the hearing date on August 1, 2000, and received a three-week extension. Tab 19 at 2. Pearman's counsel thus had approximately six weeks to prepare for the hearing, which lasted one day. On August 24, 2000, the ALJ refused Pearman's second request for an extension of the hearing date on the grounds that an extension had previously been granted and Pearman's counsel had ample time to prepare. *Id.* Pearman has not produced any evidence to show why the denial of a second extension prevented his preparation and the ALJ's scheduling decisions in this case can hardly be concluded to be an abuse of discretion. *G. Heilman Brewing Co. Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989)(district court's ability to control its scheduling procedures is well-settled).

### 4. EPA's Reliance on a Prior Five-Day Suspension Imposed Under a Settlement Agreement

Pearman argues that the ALJ committed error by allowing EPA to rely on a prior five-day suspension when it decided to remove him. Cmpl. ¶¶ 58-62. That five-day suspension was the outcome of a settlement agreement between EPA and Pearman, after Pearman appealed a prior removal action against him. The settlement agreement contained standard confidentiality language, and also contained a statement that "the terms and statements contained herein... may not be used in any administrative or judicial legal proceedings, except to enforce this Agreement." Tab 10 ¶ 1.

This court agrees with Pearman that pursuant to the terms of the settlement agreement Pearman's five-day suspension pursuant to the settlement agreement should not have been used.

9

This conclusion, however, does not reder the ALJ's decision arbitrary and capricious. First, this particular suspension was only one of five prior, misconduct-related suspensions on which the EPA relied, any *one* of which was sufficient support for the removal. In holding that the EPA did not commit procedural error by relying on the five-day suspension as a previous disciplinary action, the ALJ cited other language in the agreement authorizing EPA's use. This language states that EPA is allowed to maintain records relating to the subject matter of the settlement agreement "for the purpose of defending any other action which may be filed under any law, rule, or regulation, including but not limited to civil rights law." Tab 24 at 17. The agreement itself is a confidential record that shall not be used to show that EPA had previously removed Pearman from the federal service. The five-day suspension is also a confidential record that became part of Pearman's OPF. The OPF is a confidential record, but EPA clearly had a right to rely on prior suspensions in taking subsequent disciplinary actions, although the records of those actions are confidential. A major purpose of a suspension action is to provide a record of discipline that can be relied upon if subsequent misconduct subjects an employee to discipline.

In any event, Pearman failed to show that EPA's reliance on this prior five-day suspension for sleeping prejudiced him. The removal proposal and EPA's decision took into account four other prior suspensions based on misconduct upon which EPA could have relied. Tab 5 at 4b at 7; 4a at 5. EPA cited the five-day suspension for sleeping on duty because it was the second most recent prior offense. The offense prior to that was a seven-day suspension in 1994 for abusive language and insubordination. Tab 5 at 4b at 7. Thus, the court finds that the ALJ's decision was rationally based to a certain extent and cannot be considered arbitrary and capricious.

5. **Retaliation for Prior EEO Activity**

Pearman argues that EPA's removal action was reprisal for his having filed an EEO complaint eleven years earlier in 1989 and two prior MSPB appeals. Cmpl. ¶ 70. In ruling against Pearman, the ALJ applied the four-part analysis contained in *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986). Under *Warren,* the ALJ considered (1) whether Pearman engaged in protected activity, (2) whether Deputy Regional Administrator Ullrich knew of the protected activity, (3) whether the removal could have been retaliation under the circumstances, and (4) whether there was a genuine nexus between the protected activity and the alleged retaliation. Tab 24 at 18-19.

The ALJ considered that supervisor Ullrich, the deciding official, was aware of Pearman's prior MSPB appeals but after hearing his testimony and observing his demeanor concluded that he had been motivated solely by the seriousness of Pearman's misconduct when the decision to remove Pearman was made. The ALJ stated that he believed Ullrich's decision to remove Pearman was based solely on "Pearman's drunken condition while on duty and his behavior toward Ms. Hahn and Ms. Argentieri," and was "sufficient to outweigh any alleged motive to retaliate imputed to him." *Id.* at 19. Thus, the ALJ's ruling on Pearman's retaliation claim should be affirmed. *Campbell,* 27 F.3d at 1564; *Grffith v. Callahan,* 138 F.3d 1150, 1152 (7th Cir. 1998)(witness credibility determinations will not be disturbed unless patently wrong).

6. **The Penalty**

Pearman claims that the penalty for his misconduct-removal from federal service-was arbitrary and capricious, that it was an abuse of discretion, and that it was not in accordance with

11

law or regulation. Cmpl. ¶¶ 72-76. In reviewing a penalty, we have consistently held that "[p]enalty decisions are judgment calls best left to the discretion of the employing agency," *Gonzales v. Def. Logistics Agency*, 772 F. 2d 887, 889 (Fed. Cir. 1985). Accordingly, we will not disturb a penalty unless it exceeds the range of permissable punishment or is ' so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. *Id.* A review of the record shows otherwise.

In his analysis of EPA's decision to remove Pearman, the ALJ found that EPA properly considered the so-called "Douglas factors." *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). Tab 24 at 20-21; Tab 5 at 4a ,4b. In *Douglas v. Veteran's Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981), the MSPB set forth twelve factors which may be considered in determining what penalty is appropriate, including the nature and seriousness of the offense and its relation to the employee's job duties, the employee's performance and supervisory confidence. *Id* at 306. Not all factors will be pertinent in every case. *Parker v. United States Postal Service*, 819 F. 2d 1113, 1116 (Fed. Cir. 1987).

In the removal proposal, William Muno, Pearman's third-level supervisor, stated that Pearman's work performance had "generally.., been marginally satisfactory." Muno also noted that in October 1994, Pearman had been denied a within-grade increase because of poor work performance. Tab 5, 4b at 7. In addition, in his decision to remove Pearman, Ullrich noted that Pearman had 26 years of federal service, but that "[r]egrettably, the length of [his] federal service cannot serve to mitigate the misconduct in which [he has] engaged." Tab 5, 4 at 6. Ullrich further noted that Pearman's work performance had been considered to be "satisfactory, or marginally satisfactory." Tab 24 at 21. Ullrich also considered Pearman's misconduct so severe that he could

not be trusted to perform in a professional manner. *Id.* at 5. Thus, the ALJ received evidence that EPA considered Pearman's misconduct, his federal service, past work and disciplinary records and potential for rehabilitation in a rational manner.

Pearman also claims that The ALJ was arbitrary in affirming EPA's finding that he was a poor candidate for rehabilitation. Cmpl. ¶ 76. The decision that Pearman was not a good candidate for rehabilitation was based on the application of the *Douglas* factors, specifically on Pearman's prior disciplinary record. Tab 24 at 20-22. The ALJ found that Pearman's removal was not excessive because of the nature of his offense, his demonstrated inability to perform his job responsibilities, and his record of alcohol-related misconduct. *Id.* The ALJ also considered whether a less severe penalty would promote the efficiency of EPA, and he concluded it would not. *Id.* Thus, the ALJ performed the analysis he was required to make and the penalty chosen cannot be concluded to be grossly disproportionate to the offense, and is not so harsh that is amounts to an abuse of discretion.

7. **EPA's Policy On Alcoholism**.

Pearman argues that EPA committed harmful procedural error regarding implementation of EPA Order 3 120.3A, entitled the "Employee Alcoholism and Drug Abuse Program." Cmpl. ¶¶ 62-69. It is difficult to see how this issue might affect the underlying decision to remove Pearman, but in any event, the ALJ evaluated this argument and found that EPA had not committed error. Tab 24 at 17-18. The evidence considered by the ALJ shows that Tom Marks referred Pearman to EPA's health unit on the afternoon of February 24, 2000, consistent with EPA's alcohol treatment policy, which states that a supervisor should refer an employee to a health unit when "the employee does not appear to be in full control of his/her faculties." Tab 5 at 4h at 5. Marks

testified that Pearman was able to conduct a "cogent conversation" when he saw him in the morning. Tr. 59-60, 107. In the afternoon, when it was apparent that Pearman was not in full control of his faculties, Marks referred him to the health unit. Tr. 64-65. The ALJ found that Marks' decision to refer Pearman to health unit in the afternoon of February 24 was based on Pearman's condition, which had become aggravated since the morning of that day. Tab 24 at 17-18. Thus, the ALJ properly found that EPA did not commit harmful procedural error under EPA's policy. *Mitchell*, 845 F.Supp. at 1497.

### 8. The MSPB's Findings That Pearman Was Intoxicated While on Duty, Sleeping on Duty, and Used Abusive and Offensive Language

Pearman alleges that his removal and the MSPB's affirmation thereof was arbitrary and capricious, an abuse of discretion, and not in accordance with the law because EPA has failed to take the same action against other employees who were under the influence of alcohol while in the workplace, sleeping while on duty, or who used abusive or offensive language, gestures, or conduct. Cmpl. ¶¶ 82-86. Pearman, however, offered no evidence at the hearing to show that the EPA decision-maker, Ullrich, was aware of other employees who committed a range of offenses similar to Pearman's, but had not been disciplined. Tab 24 at 15-16. In fact, Ullrich testified that he was unaware of *any* alcohol-related allegations against employees mentioned by Pearman. Tr. 183-85; 197-98. The ALJ found that Pearman had failed to establish a discriminatory motive on the part of EPA in removing him. Tab 24 at 15-16. Thus, the ALJ's decision must be upheld because Pearman did not sustain his burden of proof. *Ali*, 998 F.Supp. at 929.

Pearman also alleges that EPA failed to offer substantial evidence that he was intoxicated

14

while on duty, that he was sleeping while on duty, and that he used abusive or offensive language, gestures, or conduct. Cmpl. ¶ 87. In fact, EPA's evidence on these issues was overwhelming, and based on this evidence, the ALJ ruled in favor of EPA. Tab 24 at 12, 14.

The ALJ discussed at length the evidence EPA presented in support of its claim that Pearman was intoxicated. Tab 24 at 4-9. EPA witnesses Argentieri, Hahn, and Marks described the bases for their beliefs that Pearman was intoxicated on the afternoon of February 24, 2000, and the ALJ found this testimony credible. Tab 24 at 10-11. In contrast, he did not find credible Pearman's general denial of the claim, or his claim that the alcohol smell emanating from him was from the cologne he was wearing. *Id.* Thus, the ALJ's decision was based on substantial evidence and is in accordance with the law.

As to the claim that he was sleeping on duty, the ALJ considered the corroborated testimony of Marks and Carney, Pearman's first- and second-level supervisors, to be more credible than Pearman's assertion that he was merely listening to music with his eyes shut. Tab 24 at 12. Witness credibility determinations are entitled to deference, and the ALJ's evaluation of the evidence on this issue should be affirmed. *Griffith,* 138 F.3d at 1152 (reviewing court must not reevaluate the facts, reweigh the evidence or substitute its own judgment for that of the agency).

As to the claim that Pearman used abusive or offensive language, gestures, or conduct on February 24, 2000, the ALJ found that the testimony of EPA witnesses Argentieri and Hahn was consistent and trustworthy. Though Pearman argued that his behavior may have been inappropriate, but denied that it was abusive or offensive, the ALJ found otherwise. Tab 24 at 13-14. The evaluation of this contradictory evidence should be upheld. *Griffith,* 138 F.3d at 1152 (witness credibility determinations will not be disturbed unless they are patently wrong).

## CONCLUSION

For the foregoing reasons summary judgment is granted in favor of the EPA on Count III of the complaint. The MSPB's decision is hereby affirmed.


**SO ORDERED**

                                          **ENTERED:**

                                          */s/ Ronald A. Guzman*

                                          **HON. RONALD A. GUZMAN**
                                          **United States Judge**